## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| **EMMANUEL JAMES NESBITT,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 5:19-cv-67 (MTT) |
| | ) | |
| **Sheriff GARY LONG,** *et al.*, | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## ORDER

United States Magistrate Judge Charles H. Weigle recommends granting in part and denying in part defendants' motions for summary judgment (Docs. 66; 68). Doc. 82. Three objections have been filed. Specifically, Defendants Sgts. Bell and Henderson, who are officers at the Butts County Detention Center ("BCDC"), have objected; Dr. Peter Wrobel, MD, Nancy Rowell-Crane, NP, Melinda Burdette, LPN, and Ashlee O'Quinn, LPN, who through Southern Correction Medical Services, Inc. ("SCM") provide contract medical services at BCDC and are referred to as the SCM defendants, have objected; and pro se plaintiff Emmanuel James Nesbitt has objected. Docs. 83; 84; 87. Pursuant to 28 U.S.C. § 636(b)(1), the Court reviews the Recommendation de novo.

## I. BACKGROUND[1]

Emmanuel James Nesbitt has been a paraplegic since August 22, 2007.  Docs. 38 at 7; 66-7 at 72:20-24.  Nesbitt's paralysis severely limits his movement and the ability to control his waist, back, stomach, bladder, and bowels.  Doc. 38 at 7.  His physical limitations require Nesbitt to, among other things, wear an adult diaper full-time and use catheters when he uses the restroom.  Docs. 38 at 7; 66-7 at 83:22-84:19.  However, if provided catheters, diapers, an accessible toilet, an accessible shower, and a wheelchair, Nesbitt can manage his toileting needs on his own.  Doc. 66-7 at 83:22-84:19.

On September 21, 2018, Nesbitt was arrested in Cartersville.  Doc. 66-7 at 17:14-25.  On September 25, 2018, Nesbitt was transferred to the BCDC.  Docs. 66-7 at 17:14-25; 68-3 at 4.  According to Nesbit, Henderson was on duty when he arrived at BCDC, and Bell replaced Henderson later that night.  Docs. 66:7 at 19:5-9; 68-3 at 3-5.  The Court will address other relevant facts in the course of ruling on the parties' objections.

In their objection, Defendants Henderson and Bell argue that because Nesbitt did not respond to their motion for summary judgment, the facts in their statement of undisputed facts are deemed admitted and thus, summary judgment in their favor is appropriate.  Doc. 83 at 7-8.  Nesbitt's failure to respond was not because of a lack of opportunity.  The Magistrate Judge granted Nesbitt three extensions to respond to the motions for summary judgment.  Docs. 75; 76; 77; 78; 79; 80.  Eventually, Nesbitt informed the Court by letter that he had retained counsel and that he was "exploring my

---

[1] Only facts necessary to explain the Court's ruling are stated.

options that I would like to reopen my case at a later time when I actually can secure proper counsel." Doc. 81. No counsel appeared, and Nesbitt never responded to either motion for summary judgment.

The Court can understand the defendants' frustration. Nesbitt's complaint makes serious, in some instances horrific, allegations that, in part, are refuted by the medical records, the authenticity and accuracy of which are not disputed, and by Nesbitt's deposition testimony. *See generally* Docs. 66-3; 66-5; 66-7; 68-4; 68-5; 70. Still, the Court "cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." *United States v. One Piece of Real Property*, 363 F.3d 1099, 1101 (11th Cir. 2004) (citation omitted). Also, the Court must "ensure that the motion itself is supported by evidentiary materials." *Id*. This is particularly so here because Nesbitt is proceeding pro se.

However, that does not mean the Court should ignore undisputed evidence and, again, the medical records are undisputed in every material way. The SCM defendants' motion lays out the facts in the records at some length. Doc. 66-1 at 2-6. While this is helpful, the Court believes a verbatim chronology of the extensive treatment and observation of Nesbitt is more enlightening, and the Court attaches that chronology as Exhibit A. In sum, the records demonstrate that beginning at 11:32 a.m. on September 26, 2018, approximately fifteen hours after Nesbitt was booked in the BCDC, SCM staff conducted a medical examination of Nesbitt and thereafter treated and observed him on an almost daily basis. Docs. 66-3 at 33-36; 68-3 at 4; 68-4 at 33-36; Ex. A.

## II. DISCUSSION

A.   **SCM defendants' objection**

The Magistrate Judge recommends that the SCM defendants' motion for summary judgment be granted with one exception. The Magistrate Judge concluded that a genuine dispute of material fact existed as to whether Nesbitt received an adequate supply of catheters and diapers and thus, recommends denial of the SCM defendants' motion for summary judgment on Nesbitt's Fourteenth Amendment deliberate indifference to serious medical needs claim. Doc. 82 at 9-13. Citing only the complaint and without identifying any responsible SCM defendant, the Recommendation states that "[p]laintiff argues that his catheter and diaper supplies are constantly inadequate." *Id*. at 11 (citing Doc. 1 at 8-9). That is contrary to Nesbitt's deposition testimony and his medical requests.[2] *See generally* Docs. 66-7; 87-1. There is no evidence that catheters and diapers were *constantly* inadequate, and at no time prior to January 8, 2019, when Nesbitt filed his complaint,[3] did he complain to SCM staff about the lack of catheters or diapers or submit medical requests for additional catheters or diapers. Rather, as Nesbitt testified in his deposition, he complained only to BCDC staff and almost all his complaints were made immediately following his booking. Doc. 66-7 at 19:5-12, 38:18-39:6, 62:21-63:17. There is no evidence that any

---

[2] Nesbitt attached to his objection copies of those medical requests. Doc. 87-1. They are included in the medical chronology. Ex. A.

[3] Nesbitt's complaint was docketed on March 4, 2019, but it was dated January 8, 2019. Doc. 1 at 10, 12. Under the pro se prisoner mailbox rule, a complaint alleging claims under 42 U.S.C. § 1983 is deemed filed on the date that the prisoner delivers it to prison officials. *Garvey v. Vaughn*, 993 F.2d 776, 783 (11th Cir. 1993). The Court "assume[s], [a]bsent evidence to the contrary, … that a prisoner delivered a filing to prison authorities on the date that he signed it." *Daniels v. United States*, 809 F.3d 588, 589 (11th Cir. 2015) (internal quotation marks and citation omitted) (applying the prison mailbox rule to a 28 U.S.C. § 2255 motion). Thus, the Court assumes Nesbitt gave his complaint to prison officials for mailing on January 8, 2019.

SCM employee was aware during the critical period following booking that Nesbitt claimed he did not have enough catheters or diapers.

Given those undisputed facts, SCM argues that, as a matter of law, no SCM employee was deliberately indifferent to Nesbitt's need for additional catheters or diapers. Doc. 66-1 at 7-11. The Court agrees. It follows that the Recommendation's conclusion that the SCM defendants "failure to provide sufficient catheters and diapers exacerbated [Nesbitt's] susceptibility" to urinary tract infections is also incorrect. Doc. 82 at 12.

Thus, even assuming BCDC staff failed to provide Nesbitt with additional catheters and diapers when he requested them, there is no evidence that the SCM defendants were aware of this problem and thus, there is no evidence that they were deliberately indifferent.

Accordingly, the recommendation that the SCM defendants' motion for summary judgment be denied with respect to Nesbitt's deliberate indifference to his serious medical needs claims is **REJECTED**.

**B.    Defendants Henderson and Bell's objection**

Defendants Henderson and Bell, aside from their objection to the Report and Recommendation's failure to deem their statement of undisputed facts admitted, complain that the Magistrate Judge did not "distinguish the capacity of the Sheriff's Office [d]efendants for which [Nesbitt's] claims may proceed" and, therefore, apparently recommended that claims against Henderson and Bell in their official capacities go forward. Doc. 83 at 10-11. That objection is easily disposed of. BCDC's attorneys have apparently forgotten that in their motion to dismiss they successfully argued that

Eleventh Amendment immunity barred Nesbitt's official capacity claims.  *See generally* Docs. 35; 55; 61.  One victory per issue is all the Court can allow.

Before addressing Henderson and Bell's remaining objections, it is necessary to clarify exactly what the Report and Recommendation concluded regarding Henderson and Bell.  First, the Report recommends that Nesbitt's Fourteenth Amendment deliberate indifference to serious medical needs claim against Henderson and Bell proceed to trial.  Doc. 82 at 13-14, 16-21.  However, it limits the scope of that claim to events immediately following Nesbitt's booking into BCDC.  *Id*.  This claim, which the Court will call the booking claim, is based on the same facts as the claim against the SCM defendants discussed above—the failure to provide catheters and diapers in the period after Nesbitt's booking.  In addition, Nesbitt alleges he did not have a wheelchair while in booking and thus could not get to a toilet or shower.  But unlike the SCM defendants, there is evidence that Henderson and Bell were aware of Nesbitt's plight.  Specifically, Nesbitt claims he complained to Henderson and later to Bell, who replaced Henderson, that he needed catheters and diapers, or he would soil himself.  *Id*.  Further, Nesbitt obviously needed assistance, or at least a wheelchair, to relieve himself.  *Id*.  Finally, Nesbitt had pre-existing buttocks wounds, which allegedly had closed before his booking.  *Id*.  Notwithstanding Henderson and Bell's knowledge of Nesbitt's serious medical needs, Nesbitt alleges they ignored his pleas and that as a result, he laid in his filth and either aggravated existing wounds or developed new wounds.  Doc. 1 at 6.

The Report recommends that the Court grant summary judgment on Nesbitt's other deliberate indifference to serious medical needs claims against the BCDC defendants.  Doc. 82 at 13-14.

That much is straightforward.  But the Report's recommendations regarding Nesbitt's conditions of confinement claim against the BCDC defendants requires clarification.  *Id*. at 16-21.  First, the Report recommends that Nesbitt's conditions of confinement claim against Henderson and Bell, based upon the events immediately following his booking, proceed.  *Id*.

Thereafter, the Report addresses Nesbitt's allegations about events that occurred after his booking and concludes that issues of fact remain regarding some of those allegations.  *Id*. at 18-21.  Specifically, the Report concludes that issues of fact remain regarding Nesbitt's assignment to cells that lack handicap-accessible beds, toilets, and showers.  *Id*. at 19-20.  But, except for his allegations about shower access, neither the Report nor the record identifies any defendant aware of, involved in, or responsible for these alleged conditions.  "[S]ection 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation."  *LaMarca v. Turner*, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks and citations omitted). Without such causal connection, a claim cannot proceed.

The shower access issue arises from Nesbitt's allegations that at some unspecified times, he only had access to showers that had a small lip or wall that prevented him from wheeling his wheelchair into the shower; the Court will call this the shower wall claim.  Doc. 1 at 7.  Nesbitt claims this caused him to repeatedly hurt his foot as he attempted to shower.  *Id*.  Based on a July 23, 2019 grievance in which Nesbitt stated that he was denied access to "[a] shower in booking by Sgt. Vu shift, Sgt.

Bell shift, and Sgt. Henderson shift," the Report concludes that Henderson and Bell "directly refused to assist Plaintiff in his shower access."  Docs. 82 at 20; 87-2 at 1.

In sum, reasonably construed, the Report recommends Nesbitt's conditions of confinement claim against Henderson and Bell proceed based on (a) the alleged events immediately following booking, and (b) the shower wall claim.  Again, the Report and record fail to link any other condition of confinement allegation or claim to Henderson, Bell, or any defendant.

With those clarifications, the Court addresses Henderson and Bell's objections to those claims.

i. **Booking claim**

Henderson and Bell do not dispute that Nesbitt had a serious medical need.  Doc 83 at 13.  Nor do they challenge the Report's conclusion that forcing Nesbitt to lay in his waste overnight was a clear violation of his right to basic sanitation.[4]  Doc. 82 at 22-23.  Rather, they argue that there is "no evidence in the record that … Bell was *aware* of [Nesbitt's] alleged condition or that … Henderson *intentionally* refused [Nesbitt] medical care."  Doc. 83 at 14 (emphasis added).  They further argue that while Nesbitt complained about the need for catheters, diapers, and a wheelchair, he "could not recall any of the officers' names that he complained to."  *Id*. at 15.  However, Henderson concedes he was the shift sergeant at the time of Nesbitt's booking.  *Id*.  But despite that concession, Henderson and Bell further support their lack of knowledge argument by pointing to Nesbitt's failure to file a grievance concerning Henderson's alleged refusal to provide medical assistance.  *Id*.  Moreover, the defendants highlight,

---

[4] On the issue of qualified immunity, Henderson and Bell only challenge the Report's conclusion that denying Nesbitt access to a shower was a constitutional violation.  Docs. 82 at 20; 83 at 19-21.

plausibly, that the record contradicted Nesbitt's allegation and he "was not forced to lie on a cot for seven days but was treated by SCM the day after he arrived to the BCDC for pre-existing ulcers and sores and was transferred to medical on September 28, 2018."  *Id*.  While Nesbitt seems to have embellished a bit, there is clear evidence that he was kept in booking for at least fifteen hours without access to basic sanitation needs.  Finally, Bell argues that "there is no evidence in the record that shows that [Nesbitt] specifically complained to … Bell regarding his alleged injuries or requests for catheters, diapers, and a wheelchair."  *Id*. at 16.

Nesbitt's deposition testimony supports his allegation about complaining to Henderson about the need for medical attention during his first night in BCDC, which Henderson allegedly ignored.  Doc. 1 at 6.  According to Nesbitt, during the period in question, it was, in fact, Henderson who Nesbitt complained to about the need for catheters and diapers.  Doc. 66-7 at 19:5-20:4, 62:21-63:9.  Therefore, the defendants' argument that Nesbitt "could not specifically name … Bell or Henderson" is incorrect.  Doc. 83 at 16.  Nesbitt testified that he complained to Henderson about the need for medical supplies, and the defendants' conceded that Bell took over as shift sergeant after Henderson.  Docs. 66-7 at 19:5-20:4, 62:21-63:9; 83 at 15.  Therefore, Nesbitt's deposition testimony presents a question of fact sufficient to submit to a jury as to whether Henderson and Bell were deliberately indifferent to Nesbitt's medical needs.

Henderson and Bell make the same factual arguments in response to Nesbitt's conditions of confinement booking claim, and they lack merit for the same reason.

Accordingly, the Court **ADOPTS** the recommendation that Nesbitt's booking

claim alleging deliberate indifference to medical needs and unconstitutional conditions of confinement go forward against Bell and Henderson.

### ii. Shower Wall Claim

Nesbitt alleged he was assigned to several dormitories that were not wheelchair accessible because the shower stalls had "a small wall at the bottom." Doc. 1 at 7. Nesbitt never identified who prevented him access to appropriate showers. Nonetheless, the Recommendation allows Nesbitt's shower wall claim to proceed against Henderson and Bell, based on Nesbitt's July 23, 2019 grievance, which, of course, was filed long after Nesbitt filed his complaint. Doc. 82 at 19 (citing Docs. 68-3 at 68; 68-4 at 9-10, 18, 50).

In this grievance, Nesbitt states that he has "currently been refused on many attempts to take a shower in booking by Sgt. Vu shift, Sgt. Bell shift, and Sgt. Henderson shift." Doc. 87-2 at 1. Nesbitt requests "access to a reliable shower when needed by all shifts." *Id*. Based on this, the Report found that the record demonstrated that "Henderson and Bell were aware of [Nesbitt's] condition, and not only disregarded it, but directly refused to assist [Nesbitt] in his shower access." Doc. 82 at 20. That finding has no support in the record.

Henderson and Bell argue that "[t]here is no evidence in the record that [they] were aware of any issues regarding [Nesbitt's] access to a shower" prior to Nesbitt's July 23, 2019 grievance. Docs. 68-3 at 56; 82 at 19; 83 at 16-18. Henderson and Bell further argue that on the day Nesbitt filed his grievance, Nesbitt was moved to J block and given a "handicap accessible room …".[5] Docs. 66-7 at 24:6-27:6; 68-3 at 56; 83 at

---

[5] In his objection, Nesbitt acknowledges states that prompt response to his grievance, but claims he still was unable to shower after the move to J-Block on July 23, 2019. Doc. 87 at 2-4. The point, however, is

18.  In his deposition, Nesbitt could not identify anyone, much less Henderson and Bell, to whom he complained about access to a more accommodating shower  Doc. 66-7 at 26:20-24.  The July 23, 2019 grievance is the only evidence suggesting Henderson and Bell knew anything about Nesbitt's complaints regarding shower access.  It is questionable whether this grievance shows Henderson and Bell, as opposed to officers who worked on these sergeants' "shifts," had actual knowledge of Nesbitt's shower complaints.  Doc. 87-2 at 1.  Nesbitt does not state he complained to Henderson and Bell.  Instead, he states that he was refused access to an accommodating shower during Vu's, Henderson's, and Bell's "shifts."[6]  Doc. 87-2 at 1.  More importantly, there is no evidence that Henderson or Bell knew of these requests prior to July 23, 2019.  Without that knowledge and because Nesbitt was moved immediately after he filed his greivance, no reasonable jury could find that Henderson and Bell were deliberately indifferent to Nesbitt's condition of confinement regarding access to a wheelchair-accessible shower.

### iii.   Nominal and punitive damages

The Report and Recommendation, in its conclusion, states that Nesbitt can recover only nominal damages.  Doc. 82 at 29.  That was a mistake; no defendant moved for summary judgment on the grounds that Nesbitt's recovery should be limited to nominal damages.  *See generally* Docs. 66-1; 68-1.  To the extent that is a recommendation, it is **REJECTED**.

---

the he was moved from Henderson's and Bell's shifts and there is no evidence that they know of any shower problems after that immediate response to the grievance.

[6] In his objection, Nesbitt states that he asked unnamed officers for showers and was "refused by the sergeant on shift."  Doc. 87 at 4.  Nesbitt includes a grievance that shows Sgt. Nunn refused to let him have a shower on July 16, 2020, over a year after his complaint was filed.  Doc. 87-2 at 2.  This grievance in no way links Henderson and Bell to the denial of Nesbitt's requests for showers.

Notwithstanding the Report's conclusion that Nesbitt could only recover nominal damages, it finds that Nesbitt's "claim for punitive damages may proceed."[7] Bell and Henderson object. Doc. 83 at 21. That objection is without merit. If Nesbitt is to be believed, he laid in his filth for some period of time while Henderson and Bell rejected his pleas. As a result, his wounds, which he says had closed, reopened. Those allegations are sufficient to create an issue of fact as to whether Nesbitt can recover punitive damages.

**C.     Nesbitt's objection**

Nesbitt makes numerous objections. Most of his objections do not address the Report's findings but are simply allegations regarding incidents that occurred after he filed his complaint and are, therefore, not included in the complaint. Doc. 87. For example, Nesbitt complains that his wheelchair is "broken," and in September 2020 Lee refused to have it repaired. *Id*. at 4-5. He states that an unnamed business gave him a new wheelchair, but in December 2020, unnamed defendants broke that wheelchair when they used it to transport other prisoners. *Id*. at 5. He alleges that he complained to Weaver and Lee on May 31, 2020 that the four-block "wall phone and kiosk" are not wheelchair accessible. *Id*. He states that despite their assurances that the kiosk would be adjusted, he is still unable to access the phones. *Id*. at 5-6. Nesbitt complains that unspecified SCM defendants would not allow him to return to Georgia Urology but made him see a different urologist on February 27, 2020. *Id*. at 8. Similarly, he states that unspecified SCM defendants caused him to miss two visits to a gastroenterologist in March and June 2020, and Nurse Joy (who is not a defendant in this action) failed to

---

[7] If an incarcerated plaintiff is limited to nominal damages due to lack of a physical injury, he cannot recover, in this Circuit, punitive damages. *Brooks v. Warden*, 800 F.3d 1295, 1307-09 (11th Cir. 2015).

give him medication on March 4, 2020.  Docs. 87 at 8-9; 87-2 at 22.  All of these events occurred long after Nesbitt filed his complaint and are, therefore, not included in the complaint, not addressed in the Report, and have absolutely no bearing on the Report.

Nesbitt objects to the Report's finding that his general allegations of mold and mildew and freezing temperatures fail to state a claim.  Doc. 87 at 7.  Plaintiff links no named defendant to this claim, and his objections are no more specific than his original allegations.

Nesbitt objects to the Report's finding that his transportation in a non-handicapped vehicle fails to state a claim.  *Id*. at 6-7.  Again, plaintiff links no named defendant to his allegations and has not alleged more than minor injuries from being transported in a bus and patrol car, which occurred in July and September 2020, long after the complaint was filed.  Doc. 87-2 at 11-13.

Apparently objecting to the Report's finding that SCM staff provided adequate daily wound care for his foot, Nesbitt alleges that SCM nurses "discriminated" against him by refusing would care on "several occasion[s]."  Docs. 87 at 8-10; 87-2 at 20.  It appears these alleged events occurred in March and June 2020 and involved Nurse Martinez and Nurse Joy, neither of whom is a defendant in this action.  Doc. 87-2 at 20-21.  This objection, therefore, has no impact on the Report's findings that "[Nesbitt's] right foot wounds were cleaned and dressed continuously through January 19, 2019."  Doc. 82 at 10.

Accordingly, after careful consideration of Nesbitt's objections and a de novo review of the Report and Recommendation, the Court determines that the objections provide no basis for rejecting the findings of the Report and Recommendation.

### III. CONCLUSION

For the reasons discussed above, the recommendation that the SCM defendants' motion for summary judgment be denied with respect to Nesbitt's deliberate indifference to his serious medical needs claim is **REJECTED**. Doc. 82 at 13. The recommendation that the SCM defendants' motion for summary judgment be granted with respect to Nesbitt's conditions of confinement claim, and his ADA and RA claims is **ADOPTED**. *Id*. at 16, 24. Accordingly, the SCM defendants' motion for summary judgment (Doc. 66) is **GRANTED**.

The recommendation that Henderson and Bell's motion for summary judgment regarding Nesbitt's deliberate indifference to his medical needs and unconstitutional conditions of confinement claims be denied is **ADOPTED** but limited to the booking claim alone. Doc. 82 at 14, 20-21. The recommendation that Nesbitt's shower wall claim, and any additional conditions of confinement claims against Henderson and Bell proceed is **REJECTED**. *Id*. at 20-21. The recommendation to reject Henderson and Bell's motion for summary judgement on their qualified immunity defense is **ADOPTED**.[8] *Id*. at 21-23. The recommendation that Defendants' Weaver, Lee, and Hobby's motion for summary judgment be granted at to Nesbitt's deliberate indifference to serious medical needs and unconstitutional conditions of confinement claims is **ADOPTED**. Doc. 82 at 14, 20-21. The recommendation that summary judgment be granted with respect to Nesbitt's ADA and RA claims against Long, Bell, Henderson, Hobby, Lee, and Weaver is **ADOPTED**. Doc. 82 at 27. Accordingly, Long, Bell,

---

[8] The Report *found* that "Henderson and Bell are not entitled to qualified immunity" as opposed to *recommending* that the Court deny their motion for summary judgment. Doc. 82 at 23. The Court treats the finding as a recommendation.

Henderson, Hobby, Lee, and Weaver's motion for summary judgment (Doc. 68) is **GRANTED in part** and **DENIED in part**.

The Report addresses injunctive relief and, instead of making a recommendation, finds Nesbitt "is not entitled to injunctive relief." Doc. 82 at 29. Given the Court's findings, it is unlikely whether Nesbitt is entitled to injunctive relief. The Court, however, **DENIES without prejudice** Bell and Henderson's motion for summary judgment regarding injunctive relief. Doc. 68-1 at 19. If necessary, the issue of injunctive relief will be addressed in the pretrial conference.

Accordingly, the Recommendation (Doc. 82) is **ADOPTED in part** and **REJECTED in part**.

**SO ORDERED**, this 31st day of March, 2021.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
